IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

Tammy Hendricks, et al.,

        Plaintiffs,

v.                          Lead Civil Action No.   2:12-cv-08633

Boston Scientific Corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**(Defendant's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims and Plaintiff's Motion for Leave to Amend Complaint)**

Pending before the court are (1) Boston Scientific Corporation's ("BSC") Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims [Docket 263];[1] and (2) plaintiff Chris Rene Wilson's Motion for Leave to Amend the Complaint [Docket 167]. For the reasons below, I **FIND** that West Virginia law, not Massachusetts law, applies to plaintiffs' punitive damages claims and that there are genuine disputes of material fact over whether punitive damages are appropriate. Accordingly, I **DENY** BSC's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims. Because I conclude West Virginia punitive damages law applies here and Ms. Wilson concedes her motion is moot if this is so, I **DENY** plaintiff Chris Rene Wilson's Motion for Leave to Amend the Complaint.

---

[1] All plaintiffs to whom this motion relates, including Chris Rene Wilson, were implanted with the Obtryx device in West Virginia. (*See* BSC's Mem. of Law in Supp. of Mot. for Partial Summ. J. on Pls.' Pun. Dam. Claims [Docket 264] ("Def.'s Mem.") ¶¶ 6–31).

I.  **Background**

Plaintiffs' cases are seven of more than 60,000 assigned to me by the Judicial Panel on Multidistrict Litigation in seven different MDLs against various manufacturers. Of the more than 60,000 cases, over 13,000 reside in the Boston Scientific MDL.[2] These cases involve the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In this particular case, plaintiffs, including Ms. Wilson, were implanted with a product manufactured by defendant Boston Scientific Corporation ("BSC"): the Obtryx Transobturator Mid-Urethral Sling System ("Obtryx"). The plaintiffs allege that as a result of implantation with this product they experienced several complications. The plaintiffs currently advance the following claims: negligence, strict liability (defective design, manufacturing defect, and failure to warn), breach of express and implied warranties, fraudulent concealment, and punitive damages.[3] (*See, e.g.*, Wilson Short Form Compl. [Docket 1] ¶ 13).

On July 9, 2014, Ms. Wilson moved the court for leave to amend her complaint so she could add a claim for damages (including punitive) under Massachusetts law. On August 1, 2014, BSC moved for partial summary judgment on plaintiffs' punitive damages claims. In September 2014 the court requested supplemental briefing on choice-of-law issues pertaining to both motions. Having reviewed the briefs and arguments of the parties, I address the defendant's motion first.

II. **Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[2] By Pretrial Order # 78, dated February 19, 2014, I originally consolidated eleven cases for trial. Of the original eleven, seven remain pending. (*See* Pretrial Order # 78 [Docket 9]).  Of the seven pending, three (Ms. Pugh, Ms. Hendricks and Ms. Moore) recently filed stipulations of dismissal with prejudice, leaving four plaintiffs.
[3] One of the remaining plaintiffs (Ms. Tyree) alleges loss of consortium.

R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III. Discussion

Plaintiffs and the defendant do not dispute that West Virginia's choice-of-law principles apply here. (*See* Def.'s Mem. in Supp. of Mot. Part. Summ. J. on Pls.' Pun. Dam. Claims [Docket 264] ("Def.'s Mem."), at 7; Pls.' Resp. in Opp. to Boston Scientific Corporation's Mot. Part. Summ. J. on Pls.' Pun. Dam. Claims [Docket 287] ("Pls.' Resp."), at 9–10). Nor do the parties dispute that West Virginia law applies to plaintiffs' claims for compensatory damages.

3

The defendant, however, contends that West Virginia's choice-of-law principles dictate application of Massachusetts substantive law to plaintiffs' punitive damages claims. (*See* Def.'s Mem. at 8–10). By contrast, plaintiffs maintain that West Virginia law controls this issue. (*See* Pls.' Resp. at 9–16).

### A. West Virginia Follows the *Lex Loci Delicti* Rule for Torts

I turn first to West Virginia's choice-of-law principles. With respect to causes of action sounding in tort, West Virginia follows the traditional rule that the applicable substantive law is the law of the place of injury. *West Virginia ex rel. Chemtall, Inc. v. Madden*, 607 S.E.2d 772, 779–80 (W. Va. 2004); *McKinney v. Fairchild Intern., Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997) ("Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury."); *Paul v. Nat'l Life*, 352 S.E.2d 550, 555, 555 n.13 (W. Va. 1986) (noting that "[*l*]ex *loci delicti* has long been the cornerstone of our conflict of laws doctrine" and collecting cases).

It is true that on a handful of occasions the Supreme Court of Appeals of West Virginia has invoked the most-significant-relationship test in the tort context. *See, e.g.*, *Oakes v. Oxygen Therapy Servs.*, 363 S.E.2d 130, 131 (W. Va. 1987) (noting that the court has used the most-significant-relationship test to resolve "particularly thorny conflicts problems"). However, such circumstances have arisen in "cases involving complex, or unusual, contractual situations and *torts which very existence are dependent upon the brea[d]th and legality of contracts*." *Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1351 (S.D. W. Va. 1990) (emphasis added) (citing *Lee v. Saliga*, 373 S.E.2d 345, 350–52 (W. Va. 1988); *Oakes*, 363 S.E.2d at 131; *New v. Tac & C Energy, Inc.*, 355 S.E.2d 629 (W. Va. 1987); *General Elec. Co. v. Keyser*, 275 S.E.2d 289 (W. Va. 1981)).

In *Oakes*, for example, the complexity that triggered the most-significant-relationship test arose from "the relationship between the Maryland [employment] *contract* and appellant's *tort* theory." 363 S.E.2d at 132 (emphases added). The *Oakes* court faced a peculiar dilemma. On the one hand, if the court characterized plaintiff's claim purely as one of *contract*, it would likely conclude under West Virginia's conflicts principles that Maryland law applied because Maryland was the place of contracting and the document contained a choice-of-law provision selecting Maryland law. *See id.* ("The plaintiff was employed . . . under an employment contract signed by the parties in Maryland that specified that Maryland law should apply to all matters arising under the contract."). On the other hand, if the court characterized plaintiff's claim as one of *tort*, it might conclude that West Virginia law applied because the plaintiff was physically present in West Virginia when he was discharged, that is, plaintiff felt his injury in West Virginia. *See id.* (noting that the decision to terminate the plaintiff occurred in Maryland "while [plaintiff] was hospitalized in West Virginia"). Rather than rigidly apply traditional contract or *lex loci delicti* choice-of-law principles, the court reasoned that the facts were "sufficiently complex because of the relationship between the Maryland contract and appellant's tort theory that the *Restatement* standards," which include the most-significant-relationship test, "provide useful guidance." *Id.*

Similarly, in *Lee v. Saliga*, the Supreme Court of Appeals noted that "[t]here is in any uninsured motorist case a related tort aspect." 373 S.E.2d 345, 348 (W. Va. 1988). But the court's invocation of the most-significant-relationship test was not explicitly premised on the interplay between the tort and contract issues. Instead, the court reached the narrow conclusion that "where in a suit for the recovery of uninsured motorist insurance benefits an issue arises which involves insurance coverage, that issue is to be resolved under conflict of laws principles applicable to contracts." 373 S.E.2d 345, 349 (W. Va. 1988) (footnote omitted); *id.* at 350

("Having concluded that the issue presented is one of contract, we turn to a discussion of the appropriate conflicts rule."). In short, it appears that the contractual nature of the claim, rather than a finding of a particularly thorny conflicts problem involving aspects of contract and tort, triggered the most-significant-relationship test. The court announced a narrow rule to address the specific circumstances before it:

> [W]e find that the Restatement standard and its commentary provide useful guidance along with our earlier cases in fashioning the following rule: The provisions of a motor vehicle liability policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties.

*Id.* at 352–53 (footnote omitted).

Here, the defendant, headquartered in Massachusetts, sells products in many states across the country. The defendant has not contracted with the plaintiffs in the sense an employer contracts with employees or an insurer contracts with motorists. In fact, there are no complex or unusual contractual wrinkles between the defendant and plaintiffs that bear significantly on the underlying product-liability claims regarding pelvic mesh. Rather than implicating aspects of tort *and* contract, these are "clear-cut cases of physical injury," to which "the *lex loci delicti* rule has generally been applied [in West Virginia]." *Oakes*, 363 S.E.2d at 131.

Stated simply, the plaintiffs were implanted with and allegedly injured by the defendant's product in West Virginia. There is no reason to depart from West Virginia's traditional conflicts principles and I **FIND** that West Virginia law applies to plaintiffs' punitive damages claims. *Cf. In re C.R. Bard, Inc.*, MDL No. 2187, 2013 WL 2432871, at *2–3 (S.D. W. Va. June 4, 2013) ("Under Georgia law, the traditional *lex loci delicti* rule generally applies to tort actions. . . . With respect to the Cissons, the surgery to implant Ms. Cisson's [pelvic mesh] product was performed in Georgia and any alleged injuries occurred in Georgia. Accordingly, Georgia law

6

applies to [the punitive damages claim in] the Cisson case."). "Certainly, a West Virginia court has an interest in protecting its citizens from tortious conduct and is not precluded from doing so simply because some of the tortious conduct occurred in another state." *Boyd v. Goffoli*, 608 S.E.2d 169, 179 (W. Va. 2004) (finding constitutional application of West Virginia punitive damages law when "Pennsylvania scheme" harmed West Virginia residents).

### B. Analysis under West Virginia's Punitive Damages Law

Having found that West Virginia law applies to plaintiffs' punitive damages claims, I now examine whether the plaintiffs have proffered sufficient evidence to survive summary judgment. I find that they have. In West Virginia, the "law has long required more than a showing of simple negligence to recover punitive damages." *Bennett v. 3 C Coal Co.*, 379 S.E.2d 388, 394 (W. Va. 1989). Punitive damages are appropriate against a defendant "[i]n actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear." *Vandevender v. Sheetz, Inc.*, 490 S.E.2d 678, 688 (W. Va. 1997); *see also* Syllabus Point 12, *Marsch v. Am. Elec. Power Co.*, 530 S.E.2d 173, 177 (W. Va. 1999) (noting that punitive damages serve as "punishment for [the defendant's] wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong." (internal quotation marks and citations omitted)).

Plaintiffs assert that BSC engaged in wanton, willful, or reckless conduct with regard to the claims alleged by plaintiffs related to the Obtryx. (*See* Pls.' Resp. at 19). The question then, on summary judgment, is whether plaintiffs' allegations raise any genuine factual disputes. This court recently resolved a similar issue under California law in favor of the plaintiffs. *See Sanchez v. Boston Scientific Corp.*, 2014 WL 4059214, No. 2:12-cv-05762, at *12-13 (S.D. W. Va. Aug.

7

18, 2014) (concluding on comparable evidence "there is a genuine dispute of material fact whether BSC's actions with respect to the Pinnacle device were malicious under California Civil Code § 3294"). The court's analysis in *Sanchez* applies, *mutatis mutandis*, to the present claims regarding the Obtryx device.

Here, plaintiffs argue that BSC was aware that the polypropylene used to construct the Obtryx device was not intended to be implanted in the human body. (*See* Pls.' Resp. at 17). The plaintiffs point to a material data safety sheet ("MSDS") issued by BSC's supplier of polypropylene that warned BSC not to implant the material in the human body. The Obtryx device is constructed using a polypropylene resin supplied by Chevron Phillips Chemical Company LP. Chevron Phillips authored the MSDS that accompanied the resin. The MSDS included the following warning:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

(MSDS [Docket 287-4], at 1). Despite this warning, BSC used Chevron Phillips polypropylene in its Obtryx devices.

Additionally, the plaintiffs argue that BSC knew it needed to conduct long-term safety studies of the polypropylene material in the Obtryx device. The plaintiffs point to the written agreement between BSC and its polypropylene supplier ("the Agreement"). The Agreement cautioned BSC to make its own determination of the safety and suitability of the polypropylene material in BSC's products. The agreement stated:

> BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE SAFETY AND SUITABILITY OF THE . . . POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT

THE . . . POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Agreement [Docket 287-6], at 3–4)[4].

Despite the MSDS warning and the admonition from BSC's polypropylene supplier to conduct its own tests, an internal BSC document indicated that BSC sponsored no clinical studies on the Obtryx device. (*See* Obtryx Clinical Risk/Benefit Analysis [Docket 287-1] at 6[5]).

In light of this evidence, I **FIND** that there is a genuine dispute of material fact whether BSC's actions with respect to the Obtryx device warrant an award of punitive damages. A reasonable jury could find that by ignoring a warning on the MSDS and failing to conduct clinical testing, BSC's actions were wanton, willful, or reckless under West Virginia punitive damages law. *Cf. Davis v. Celotex Corp.*, 420 S.E.2d 557, 561 (W. Va. 1992) ("[W]e conclude that when an asbestos manufacturer has actual or constructive knowledge of the severe health hazards caused by a product and continues to manufacture and distribute that product, the manufacturer may be found liable for punitive damages to those injured by the product."). Accordingly, BSC's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims is **DENIED**.

C. **Ms. Wilson's Motion for Leave to Amend the Complaint**

I now turn to Ms. Wilson's Motion for Leave to Amend the Complaint. She makes clear in supplemental briefing that "[t]he need to amend Plaintiffs' complaints would be rendered moot if the Court denies BSC's [motion]."[6] (Pls.' Suppl. Br. in Supp. of Pls.' Mot. for Leave to Amend Compl. [Docket 406], at 1). She acknowledges that should "the Court conclude[] that . . . West Virginia punitive law applies, . . . Plaintiffs' need to pursue their claims under

---

[4] Pagination here is the court-stamped page number at the top of the exhibit pages.
[5] Pagination here is the court-stamped page number at the top of the exhibit pages.
[6] Ms. Wilson's Motion is one of many motions to amend the complaint pending before the court in a number of individual cases.

Massachusetts law would be rendered moot." (*Id.* at 2). Having concluded that West Virginia punitive damages law applies here, I **DENY** Ms. Wilson's motion as moot.

## IV. Conclusion

For the reasons explained above, Boston Scientific Corporation's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims [Docket 263] is **DENIED** and Ms. Wilson's Motion for Leave to Amend the Complaint [Docket 167] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: October 9, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE