**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JACQUELYN TYREE, et al.,

                          Plaintiffs,

v.                                                    CIVIL ACTION NO.  2:12-cv-08633

BOSTON SCIENTIFIC CORPORATION,

                          Defendant.

**MEMORANDUM OPINION AND ORDER
(Motions *in Limine*)**

Pending before the court are Boston Scientific Corporation's ("BSC") Motions *in Limine* [Docket 374], Plaintiff Jeanie Blankenship's Motion *in Limine* [Docket 363], Plaintiffs' Motions *in Limine* [Docket 366], Plaintiff Chris Rene Wilson's Motion *in Limine* to exclude reference to the plaintiff's prior suicide attempt [Docket 368], Plaintiff Chris Rene Wilson's Motion *in Limine* to exclude reference to the plaintiff's methods of conception [Docket 369], Plaintiff Chris Rene Wilson's Motion *in Limine* to exclude reference to the plaintiff's gender identity [Docket 370], Plaintiff Chris Rene Wilson's Motion *in Limine* to exclude reference to plaintiff's diagnosis of trigeminal neuralgia [Docket 371], Plaintiff Chris Rene Wilson's Motion *in Limine* to exclude reference to the plaintiff's prior lawsuit [Docket 372], and Plaintiff Chris Rene Wilson's Motion *in Limine* to exclude reference to the plaintiff's worker's compensation claim [Docket 373]. For the reasons set forth below, Defendant's Initial Motions *in Limine* [Docket 374] are **GRANTED in part** and **DENIED in part**, Plaintiffs' Omnibus Motions [Docket 366]

*in Limine* are **GRANTED in part** and **DENIED in part**, Plaintiff Jeanie Blankenship's Motion *in Limine* [Docket 363] is **GRANTED in part** and **DENIED in part**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Prior Suicide Attempt [Docket 368] is **GRANTED**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Method of Conception [Docket 369] is **GRANTED**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Gender Identity [Docket 370] is **GRANTED**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Diagnosis of Trigeminal Neuralgia [Docket 371] is **DENIED without prejudice**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Prior Lawsuit [Docket 372] is **GRANTED**, and Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Worker's Compensation Claim [Docket 373] is **GRANTED**.

## I.      Background

This consolidated case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are over 60,000 cases currently pending, over 13,000 of which are in the Boston Scientific Corporation MDL, MDL 2326. In this particular case, the four consolidated plaintiffs were surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System ("the Obtryx"), a mesh product manufactured by BSC. (*See* Pretrial Order # 78 [Docket 9], at 1–2).[1] All of the plaintiffs received their

---

[1] I originally consolidated the cases of eleven plaintiffs implanted with the Obtryx. (*See* Pretrial Order # 78 [Docket 9], at 1 (naming Canterbury, Billings, Sexton, Hendricks, Moore, Tyree, Campbell, Blankenship, Pugh, Workman, and Wilson as consolidated plaintiffs). Four plaintiffs now remain in this action. (*See* Pretrial Order # 94 [Docket 67], at 1 (removing *Sexton* case from the consolidated West Virginia cases); Stipulation of Dismissal [Docket 104] (dismissing the claims of Donna Billings with prejudice); Order Dismissing Canterbury Plaintiff [Docket 107], at 1 (dismissing the claims of Karen Canterbury with prejudice); Stipulation of Dismissal [Docket 123] (dismissing the claims of Neasha Workman with prejudice); Stipulation of Dismissal With Prejudice[Docket 426] (dismissing with prejudice the claims of Sharon Pugh, et al.); Stipulation of Dismissal With Prejudice [Docket 433] (dismissing plaintiff Tammy Hendricks with prejudice); Stipulation of Dismissal With Prejudice [Docket 427] (dismissing

surgeries in West Virginia. The plaintiffs claim that as a result of implantation of the Obtryx, they have experienced "erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, and chronic pelvic pain." (*Id.* at 4 (quoting the master complaint)). The plaintiffs allege negligence; strict liability for design defect; strict liability for manufacturing defect; strict liability for failure to warn; breach of express warranty; breach of implied warranty; and punitive damages. (*Id.* at 2). One plaintiff (Ms. Tyree) has also alleged loss of consortium. (*Id.*).The instant Motions *in Limine* involve the parties' efforts to exclude or limit certain evidence, arguments, and testimony at trial.

## II.     BSC's Motions

BSC submits 25 Motions *in Limine* [Docket 374]. I have already ruled on its Motion in Limine to Preclude Evidence Concerning Material Safety Data Sheets ("MSDS"). (*See* Mem. Op. & Order (Def.'s Mot. *in Limine* re: MSDS) [Docket 443]). I will address BSC's remaining Motions *in Limine* below.

### 1.  Motion to Preclude Any Evidence or Argument Regarding Fraud on the FDA or Alleged Misbranding

BSC seeks to preclude evidence that BSC "withheld information from the FDA, misled the FDA, or misbranded its device as FDA-cleared." (Def. BSC's Mem. in Supp. of Its Initial Mots. *in Limine* ("Def.'s Mem. Supp.") [Docket 375], at 1). BSC argues that such evidence would only be relevant to a "fraud-on-the-FDA" claim, which is preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Based on the court's rulings on the inadmissibility of FDA evidence in similar cases, the plaintiffs have stated that they "will not

---

plaintiff Dreama Moore with prejudice)).

offer argument or evidence of fraud on the FDA or misbranding under 21 U.S.C. § 352(a), including from Dr. Peggy Pence." (*See* Pls.' Omnibus Resp. to BSC's Initial Mots. *in Limine* ("Pls.' Omnibus Resp.") [Docket 395], at 1). Because the plaintiffs do not oppose this motion *in limine*, it is thus, **GRANTED**.

### 2.     Motion to Preclude Evidence Concerning Material Safety Data Sheets

I have already ruled on this motion. (*See* Mem. Op. & Order (Def.'s Mot. *in Limine* re: MSDS) [Docket 443]).

### 3.     Motion to Preclude Evidence Concerning Polyethylene MSDS

BSC seeks to preclude "testimony and evidence concerning the Material Safety Data Sheet for Marlex and MarFlex Polyethylenes . . . . as it does not apply to the Phillips Sumika Marlex Poly**propylene** contained in Boston Scientific's Obtryx device." (Def.'s Mem. Supp. [Docket 375], at 7). BSC explains that BSC employees and consultants responded to questions concerning the polyethelene material safety data sheet ("MSDS") thinking they were responding to questions concerning the polypropylene MSDS. The plaintiffs attempt to highlight the fact that the polyethylene MSDS was written in 2001, three years before the polypropylene MSDS. (Pls.' Omnibus Resp. [Docket 395], at 4). However, BSC clearly states that polyethylene is not a material used in BSC's mesh. (*Id.* at 8; BSC's Reply in Supp. if Its Mot. to Preclude Evidence Concerning Polyethylene MSDSs [Docket 438], at 1). Evidence related to materials not present in the device at issue is clearly outside the scope of the plaintiffs' claims and irrelevant. Accordingly, BSC's motion *in limine* on this issue is **GRANTED**.

### 4.   Motion to Preclude Evidence of BSC's Procurement of Polypropylene Resin

BSC seeks to preclude "any evidence concerning BSC's procurement of polypropylene resin, including, but not limited to, purchases of Phillips Sumika Marlex HGX-030-01

4

polypropylene resin from a Chinese distributor in July 2011." (Def.'s Mem. Supp. [Docket 375], at 9). BSC argues that BSC's procurement of polypropylene resin is irrelevant to the plaintiffs' product defect claims, particularly any evidence regarding polypropylene resin not used in the manufacture of the plaintiffs' Obtryx devices. (Id.). BSC points out that all of the plaintiffs' implant dates predate the procurement from a Chinese distributor. (Id. at n.9). I **FIND** that evidence as to the methods by which BSC acquired polypropylene resin is potentially relevant as to the plaintiffs' substantive claims, as well as their claims for punitive damages. However, an evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I simply cannot make a substantive ruling at this time without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**.

### 5. Motion to Preclude Evidence Regarding the ProteGen Device

BSC seeks to preclude "any evidence or testimony concerning the Boston Scientific ProteGen sling [ ], including but not limited to, Boston Scientific's recall of that product." (Def.'s Mem. Supp. [Docket 375], at 11). BSC argues that evidence concerning the ProteGen is irrelevant, misleading to the jury, unfairly prejudicial, and a cause of undue delay and wasted time because the ProteGen and the Obtryx are "not substantially similar." (Id.). BSC notes that the two products are made from different materials, use a different surgical technique, and involve a different regulatory history. (Id.). BSC cites to my decision in *Lewis v. Ethicon*, granting Ethicon's motion *in limine* regarding the recall of the ProteGen sling. *See* No. 2:12-cv-4301, 2014 WL 505234, at *16 (S.D. W. Va. Feb. 5, 2014). However, I **FIND** the issue in the present case distinguishable.

In *Lewis*, I excluded evidence regarding the recall of the ProteGen sling because it would require extensive discussion of the FDA 510(k) clearance process, given that Ethicon used the ProteGen as a regulatory predicate device. *See id.* ("A discussion of the 510(k) process, whether in the context of the clearance of a new device or the recall of a predicate product, presents the danger of unfair prejudice and confusing the jury."). Here, BSC did not use the ProteGen as a regulatory predicate device, a fact that BSC itself points out in its Memorandum in Support. (*See* Def.'s Mem. Supp. [Docket 375], at 12). The ProteGen was a product that BSC developed, sold, and subsequently recalled. (Pls.' Omnibus Resp. [Docket 395], at 7). An evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. The context in which the plaintiffs seek to introduce evidence of the ProteGen is clearly different than that of the Ethicon trial. However, I simply cannot make a substantive ruling at this time without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**.[2]

6. **Motion to Preclude Any Evidence or Argument Concerning BSC's Intent, Motives, or Ethics**

BSC seeks to exclude evidence or testimony of its intent, motives, and ethics. BSC argues that this evidence or testimony is irrelevant to the plaintiffs' claims; speculative; would cause confusion, unfair prejudice, and undue waste of time; and is beyond the scope of the plaintiffs' experts' knowledge. (*See* Def.'s Mem. Supp. [Docket 375], at 14). I need more information about the particular piece of evidence or argument being challenged in this motion, and I lack the context needed to properly rule on the matter at this time. Therefore, I **DENY without prejudice** BSC's motion as to this issue.

---

[2] This finding is limited by my exclusion of any evidence related to the FDA 510(k) clearance process and enforcement.

7.     **Motion to Preclude Any Evidence or Argument Concerning Foreign Regulatory Actions**

BSC seeks to exclude any evidence or argument concerning foreign regulatory actions on BSC's pelvic mesh products. BSC argues that such evidence is irrelevant because all of the plaintiffs' BSC products were implanted in the United States and that such evidence would be unduly prejudicial, confusing to the jury, and a waste of time. (*See* Def.'s Mem. Supp. [Docket 375], at 17).

I have previously denied without prejudice a defendant's motion *in limine* concerning evidence of foreign regulatory actions. *See Huskey, et al. v. Ethicon, Inc., et al.*, No. 2:12-cv-05201, 2014 WL 3861778, at *2 (S.D. W. Va. Aug. 6, 2014); *In re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation*, No. 2:11-cv-00195, 2013 WL 3282926, at *2 (S.D. W. Va. June 27, 2013). Along with several other motions *in limine*, I found that granting a motion *in limine* on this subject was premature:

> I simply cannot make a substantive ruling at this time without knowing the particular piece of evidence that the plaintiffs seek to introduce or argument that the plaintiffs seek to make, and the context in which the plaintiffs seek to introduce such evidence or make such argument. In short, a blanket exclusion of such evidence, argument or testimony is premature at this time[.]

*In re C. R. Bard*, 2013 WL 3282926, at *2. At trial, this evidence may be inadmissible because different countries have different regulatory systems and schemes. This case arises under the laws of the United States, and, therefore, evidence concerning other countries' regulatory policies may confuse and mislead the jury. *See Deviner v. Electrolux Motor, AB, et al.*, 844 F.2d 769, n.2, 773 (11th Cir. 1988) (finding that district court did not abuse discretion when granting motion *in limine* to exclude "Swedish law and statistics" under the rationale that "Swedish Standards are not relevant in a U.S. product liability case involving a saw sold in the U.S.").

BSC provides a few examples of evidence related to foreign regulatory actions that the plaintiffs could possibly introduce at trial. However, the plaintiffs state that their evidence is not "of any 'foreign regulatory action'" and "raises no question regarding the applicability or interpretation of foreign law." (Pls.' Omnibus Resp. [Docket 395], at 11). The plaintiffs assert that their evidence instead "discusses serious health complications associated with these products and as such, is relevant to and admissible for purposes of establishing BSC's knowledge, notice and scienter, as well as the state of the art." (*Id.*).

As in *Bard*, I lack the specificity and context needed to properly rule on this matter at this time. *See In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 551-52 (S.D.N.Y. 2004) ("The Court finds no legal basis upon which now to rule . . . that testimony regarding foreign regulatory actions is irrelevant as a matter of law in a United States products liability case governed by American law . . . Any ruling as to the relevancy of otherwise admissible evidence concerning foreign regulatory actions therefore would be premature."). Therefore, BSC's motion with respect to this matter is **DENIED without prejudice**.

8.   **Motion to Preclude Any Evidence or Argument Concerning BSC's Post-Implant Product Innovations Including Obtryx II, LITE Mesh and Colored Mesh**

BSC seeks to preclude evidence of "subsequent changes or new product lines developed by Boston Scientific after the implant dates of the Plaintiffs" because products like the Obtryx II, Lite, and colored mesh have different properties than the Obtryx. (Def.'s Mem. Supp. [Docket 375], at 20). BSC notes that "[t]he exclusion of subsequent remedial measures is designed to encourage manufacturers to 'make improvements for greater safety.'" (*Id.* (citation omitted)). Additionally, BSC argues that any subsequent product innovation is not relevant to the plaintiffs'

8

defect claims because such innovations would not have made a difference with respect to the plaintiffs' alleged injuries. (*Id.* at 21).

Although it appears that BSC's motion has merit, as evidence relating to other devices is outside the scope of the plaintiffs' design defect claim, this issue is better suited to be handled at trial, as evidence is presented. Furthermore, evidence of subsequent remedial measures that is inadmissible to prove "negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction," may be admitted "for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. In other words, the admissibility of such evidence or argument depends on the context and method by which the plaintiffs seek to introduce it. Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**.

**9.** **Motion to Preclude Any Evidence or Argument that BSC Owed or Breached a Duty to Warn Plaintiffs Directly**

I will enter a separate ruling on this motion at a later date.

**10.** **Motion to Preclude Any Evidence or Argument that BSC Owed or Breached a Duty to Train Plaintiffs' Surgeons**

BSC moves to preclude evidence on BSC's duty to train the treating physicians because such evidence is irrelevant: the plaintiffs have not asserted claims against their implanting physicians, and West Virginia does not recognize a duty to train a physician. I have previously denied a similar motion in the face of these reasons. In *Lewis*, I ruled that even though Texas does not recognize a duty to provide training to physicians, evidence or argument related to physician training might possibly be relevant for some other purpose, depending on the context and method by which it is introduced. *See Lewis*, 2014 WL 505234, at *5. I see no reason to

deviate from this ruling here. Therefore, BSC's motion to preclude evidence and argument on the duty to train physicians is **DENIED without prejudice**.[3]

### 11. Motion to Preclude Any Evidence or Argument Concerning Marketing and Promotional Materials Not Seen by Plaintiffs' or Their Surgeons

BSC seeks to preclude "marketing materials that some of the Plaintiffs and their prescribing physicians did not read or see" on the basis that the materials are irrelevant and unfairly prejudicial. (Def.'s Mem. Supp. [Docket 375], at 28–29). I have rejected this argument before, finding that "[t]hese materials *may* be relevant to the plaintiffs' other claims, including negligence and punitive damages. *In re C. R. Bard, Inc.*, 2013 WL 3282926, at *6 (emphasis added). This finding applies here, where the plaintiffs have claimed negligent design and have asked for punitive damages. I can address any further disputes about relevancy at trial, when the content and proffered use of the materials is apparent. Thus, BSC's motion *in limine* on this issue is **DENIED without prejudice**.

### 12. Motion to Preclude Product Complaints, Adverse Event Reports, and Medical Device Reports Concerning [Products Other Than the Obtryx].[4]

BSC seeks to preclude evidence of product complaints, adverse event reports ("AERs"), or Medical Device Reports ("MDRs") for products other than the Obtryx. BSC argues that such evidence is (1) inadmissible hearsay; (2) irrelevant to causation or notice; and (3) inadmissibly

---

[3] I note, however, that West Virginia's law on the duty to train physicians is not as settled as BSC suggests. *See Runyon v. Hannah*, No. 2:12-cv-1394, 2013 WL 2151235, at *7 (S.D. W. Va. May 16, 2013) ("Under West Virginia law, claims of negligent training and supervision are governed by general negligence principles. *See[, e.g.,] Pruitt v. W. Va. Dep't of Pub. Safety*, 664 S.E.2d 175, 179, 181–83 (W. Va. 2008) (allowing claims of negligent failure to train and supervise to proceed to trial); . . . ."). In any event, although the plaintiffs state in their memorandum that they are pursuing a "negligent undertaking claim," no such claim exists in the plaintiffs' complaint. (*See* Master Long Form Compl. & Jury Demand, MDL No. 2326, at ¶¶ 55–59 (alleging negligence in "designing, manufacturing, marketing, labeling, packaging, and selling" the products)). Accordingly, whether West Virginia recognizes a duty to train physicians has no effect on the plaintiffs' negligence claims.

[4] BSC's Motion *in Limine* entitles this motion "Motion to Preclude Product Complaints, Adverse Event Reports, and Medical Device Reports Concerning Patients Other Than Plaintiffs," but the substance of the motion concerns reports on "products other than Obtryx." (Def.'s Mem. Supp. [Docket 375] at 31). I review the motion based on its substance, rather than its title.

prejudicial under Rule 403. I have previously refused to exclude such evidence in the motions

stage of MDL litigation on the basis that

> there are simply too many factors that might determine whether the product
> complaints, AERs, and MDRs might be admissible. Without knowing the specific
> contents of any complaints, AERs or MDRs that the plaintiffs may seek to
> introduce, or how the plaintiffs might seek to use or introduce these complaints
> and reports, I cannot make a substantive ruling at this time. . . . [A] blanket
> exclusion of this evidence would be premature . . . .

*Id.* at *6. This ruling equally applies here.

First, I cannot determine whether these materials constitute inadmissible hearsay until I

observe how the plaintiffs use them at trial. In *Bard*, I found that the materials fell within the

hearsay exceptions provided in Federal Rules of Evidence 803(6) and 803(8) and that "to the

extent an expert might rely upon AERs in reaching certain opinions," experts can rely on

otherwise inadmissible evidence to reach their opinions. *Id.* at *5 (citing *Mahaney ex rel. Estate

of Kyle v. Novartis Pharms. Corp*, 835 F. Supp. 2d 299, 312 (W.D. Ky. 2011)). These same

hearsay exceptions might come into play at trial in this case.

Second, contrary to BSC's position, "courts have held that [AERs and MDRs] may show

notice and provide support for causation," so long as the evidence of injuries are "substantially

similar to those in the case at bar." *Id.* Finally, if it appears that the plaintiffs' introduction of

AERs and MDRs will create unfair prejudice, BSC should object at that time, informed by the

content of the proffered materials and the context in which they are introduced. For these

reasons, I **DENY without prejudice** BSC's motion *in limine* on this matter.

### 13. Motion to Preclude Any Evidence or Argument that Pelvic Mesh Can Cause Complications Not Experienced by Plaintiffs

BSC moves to preclude any evidence of "medical complications purportedly caused by

Boston Scientific's devices, but not experienced by Plaintiffs themselves," such as evidence that

11

polypropylene mesh causes "gross hematuria, inflammatory myofibrolastic tumors, and cancer." (Def.'s Mem. Supp. [Docket 375], at 34). Because none of the plaintiffs have alleged these injuries, BSC argues that such evidence is irrelevant and unfairly prejudicial.

I agree that evidence of complications that no plaintiff experienced is irrelevant and lacking in probative value. For the claims that require evidence of injury (strict liability for failure to warn, strict liability for design defect, and negligence), only the injuries experienced by the complainant are relevant. Strict liability for failure to warn, for instance, requires the plaintiff to show that the inadequate warning "made the product not reasonably safe" and that "the defect was the probable cause of *her* injuries." *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603, 609 (W. Va. 1983) (emphasis added). Strict liability for defective design also hones in on the plaintiff's injuries. *See Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 682 (W. Va. 1979) (explaining that the cause of action in product liability cases is "whether the defect was the proximate cause of *plaintiff's* injury") (emphasis added). With respect to negligence, the inquiry is whether the defendant "proximately caused the injuries *of the plaintiff.*" *Strahin v. Cleavenger*, 603 S.E.2d 195, 205 (W. Va. 2004) (emphasis added). Accordingly, evidence that the Obtryx causes injuries not experienced by the plaintiffs has little probative value. Moreover, elaborating on injuries that the plaintiffs did not incur risks "needless presentation of cumulative evidence." Fed. R. Evid. 403. Therefore, BSC's motion *in limine* on this issue is **GRANTED**.

### 14. Motion to Preclude Any Evidence or Argument Concerning Lawsuits against Other Manufacturers of Pelvic Mesh Products

On the basis that the evidence is irrelevant, unfairly prejudicial, and misleading to the jury, BSC moves to preclude any evidence of "complaints or lawsuits against other manufacturers of pelvic mesh to argue that Boston Scientific's products were defective, inadequately labeled, or unreasonably dangerous." (Def.'s Mem. Supp. [Docket 375], at 36).

Pointing to my previous ruling in *Bard*, the plaintiffs counter that disputes about admissibility of this evidence should be reserved for trial if "BSC opens the door on this issue." (Pls.' Omnibus Resp. to BSC's Initial Mots. *in Limine* ("Pls.' Omnibus Resp. [Docket 395], at 24).

The use of motions *in limine* that lack specificity and are without context have led the court in the past to defer judgment on several evidentiary issues, including this one. *See In re C. R. Bard, Inc.*, 2013 WL 3282926, at *2. Having gained greater familiarity, however, the court was confident in substantively ruling on the admissibility of other lawsuits against the same defendant in *Lewis*:

> [E]vidence of lawsuits is generally considered inadmissible hearsay. . . . Further, evidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403. Although other lawsuits may ultimately show that the [product] is defective, the jury must still find that the [product] caused [the plaintiff's] injuries. Evidence of other lawsuits is likely to confuse and mislead the jury from that task, and it is highly prejudicial to [the defendant].

2014 WL 505234, at *6. I find this rationale, as applied to exclude lawsuits against the *same* defendant, to be exceedingly appropriate here, where the plaintiffs seek to introduce evidence of lawsuits against *other* manufacturers. Even assuming evidence about lawsuits brought against other manufacturers has some relevance to the present case, the relevance is dwarfed by the risk of unfair prejudice posed by requiring BSC to attest for lawsuits in which it was not involved. Accordingly, pursuant to Rule 403, I **GRANT** BSC's motion *in limine* on this issue.

### 15.  Motion to Preclude Any Evidence or Argument Concerning Other Mesh Lawsuits, Investigations, Claims, Verdicts, and Trials against BSC

BSC moves to preclude any evidence or argument concerning "other lawsuits, claims, investigations, regulatory actions, or settlements involving Boston Scientific's mesh products— whether or not related to the Obtryx." (Def.'s Mem. Supp. [Docket 375], at 38). BSC argues that this evidence should be precluded because it is irrelevant under Federal Rule of Evidence 401,

"unfairly prejudicial and confusing" under Federal Rule of Evidence 403, and inadmissible hearsay. (*Id.*).

I granted a motion *in limine* in *Lewis* to exclude evidence of other mesh lawsuits against the defendant. *See* 2014 WL 505234, at *5-6. I noted that "evidence of lawsuits is generally considered inadmissible hearsay[,]" and ultimately excluded the evidence on Rule 403 grounds. I explained:

> [E]vidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403. Although other lawsuits may ultimately show that the [product] is defective, the jury must still find that the [product] caused [the plaintiff's] injuries. Evidence of other lawsuits is likely to confuse and mislead the jury from that task, and it is highly prejudicial to [the defendant]. Accordingly, Ethicon's motion on this issue is **GRANTED**.

*Id.* I apply this reasoning to the evidence challenged by BSC in the instant motion *in limine*. Therefore, I **GRANT** BSC's motion on this matter.

### 16.   Motion to Preclude Any Evidence or Argument Concerning Unrelated FDA Corporate Warning and 483 Letters, All Pertaining to Cardiac Devices

BSC seeks to preclude evidence of a 2006 corporate warning and FDA 483 letters because such evidence concerns devices unrelated to pelvic mesh. (Def.'s Mem. Supp. [Docket 375], at 40). BSC argues that "[t]his evidence should be excluded because it is (A) irrelevant, (B) improper character evidence, and (C) unfairly prejudicial." (*Id.*). Based on the court's rulings on the inadmissibility of FDA evidence in similar cases, the plaintiffs have stated that they "will not introduce evidence or arguments regarding BSC's correspondence with FDA, including 483 corporate warning letters." (Pls.' Omnibus Resp. [Docket 395], at 28). Because the plaintiffs do not oppose this motion *in limine*, it is thus, **GRANTED**.

### 17.   Motion to Preclude Any Evidence or Argument Concerning the Parties' Litigation Conduct

BSC moves to preclude evidence or argument concerning the parties' litigation conduct, such as:

A) Evidence of mediation or settlement negotiations;

B) Boston Scientific's designation of any documents as confidential or any suggestion that Boston Scientific's actions were improper or an attempt to keep certain documents secret; and

C) Evidence of Boston Scientific's litigation conduct and of Court rulings such as motions *in limine* or objections during discovery.

(Def.'s Mem. Supp. [Docket 375], at 43). BSC argues that evidence of mediation or settlement negotiations should be excluded because "such evidence is not admissible to prove liability or invalidity of the claim or amount" under Federal Rule of Evidence 408. (*Id.*). BSC contends that evidence concerning the designation of confidential documents, BSC's litigation conduct, and Court rulings should be excluded under Federal Rules of Evidence 401, 402 and 403.

I have previously ruled on similar motions *in limine* in other cases. *See In re C. R. Bard, Inc.*, 2013 WL 3282926, at *8 (challenging the same three types of evidence); *Lewis*, 2014 WL 505234, at *9 (ruling on motion *in limine* to preclude plaintiffs from referring to the designation of documents as confidential for purposes of discovery).

As for evidence of mediation or settlement negotiations, BSC is correct that "such evidence is not admissible 'either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction.' Fed. R. Evid. 408(a). However, under Rule 408(b), this evidence may be admitted for other purposes." *In re C. R. Bard, Inc.*, 2013 WL 3282926, at *8.

As for evidence concerning BSC's litigation conduct and Court rulings, "it is impossible to determine the relevancy of any argument or evidence concerning these issues at this stage. Accordingly, I **FIND** that a blanket exclusion of such evidence and argument would be

premature at this time[.]" *Id.* Therefore, I **DENY without prejudice** BSC's motion *in limine* with respect to evidence of mediation or settlement negotiations and evidence concerning BSC's litigation conduct and Court rulings.

As for evidence concerning the designation of confidential documents, "[w]hether a party designates a document as confidential during the litigation process is absolutely irrelevant." *Lewis*, 2014 WL 505234, at *7. The jury will be instructed at trial to disregard the confidential marking on documents. Therefore, I **GRANT** BSC's motion *in limine* with respect to this issue.

Thus, I **GRANT IN PART** and **DENY IN PART** BSC's motion *in limine* on this matter.

### 18. Motion to Preclude Any Evidence or Argument Concerning BSC's Finances or Employment Decisions

BSC seeks to preclude any evidence or argument concerning BSC's finances or employment decisions because "such evidence is irrelevant to this lawsuit and carries the risk of jury confusion and unfair prejudice." (Def.'s Mem. Supp. [Docket 375], at 46). BSC argues that the plaintiffs are attempting to "[paint] [BSC] as a bad actor improperly motivated by profit" and "induce the jury to render a verdict simply because Boston Scientific is a large company with significant resources[.]" (*Id.* at 46-47). I note that I denied BSC's motion for summary judgment on the issue of punitive damages. (*See* Mem. Op. & Order [Docket 425]). Therefore, consistent with my finding in *Bard*, I **FIND** that evidence of BSC's finances or employment decisions may be relevant as to the amount of punitive damages. *See* 2013 WL 3282926, at *15. Furthermore, to the extent that certain financial information "[paints] [BSC] as a bad actor improperly motivated by profit," it may be relevant to the question of liability for punitive damages. *See id.* at 12, 15 (denying Bard's motions *in limine* as to Bard's financial information or condition *and* as to Bard's intent, motives, and ethics). Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**.

19.    **Motion to Preclude Any Evidence or Argument Concerning Plaintiffs'**
       **Implanting Physicians' Decision to Discontinue Using Polypropylene Mesh**
       **Slings or the Obtryx to Treat Stress Urinary Incontinence**

BSC moves to preclude evidence that Dr. Luby (implanting physician for Ms. Tyree) and Dr. Lassere (implanting physician for Ms. Blankenship) recently decided to discontinue use of the Obtryx sling in their medical practice. BSC contends that such evidence would "improperly suggest" that the doctors' decisions "imply a defect in the Obtryx." (Def.'s Mem. Supp. [Docket 375], at 48). The plaintiffs respond that the motion should be denied because this evidence provides a rebuttal to any testimony implying that the doctors "have no concerns whatsoever with the Obtryx." (Pls.' Omnibus Resp. [Docket 395], at 32).

Given the various ways in which the parties could use this information at trial, I cannot make a pre-trial substantive ruling on this matter. Moreover, not all of the physicians' testimony on this issue casts BSC in a negative light, and as a result, I cannot ascertain the prejudicial nature of this evidence without knowing the specific testimony that the plaintiffs seek to offer. (*See, e.g.*, Lassere Dep. [Docket 374-18], at 200:5–9 (assenting that his experience with the Obtryx sling "was a positive one"); Luby Dep. [Docket 374-17], at 37:10 (confirming that he "liked" the Obtryx product for treating stress urinary incontinence)). For these reasons, I **DENY without prejudice** BSC's motion *in limine* concerning the physicians' reasons for discontinuing use of the Obtryx.

20.    **Motion to Preclude Any Evidence of BSC's Legal Duty**

BSC asks this court to preclude any evidence that BSC had a legal duty to inform doctors about the risks associated with the Obtryx sling because expert witnesses and lay witnesses cannot offer opinions as to legal duties. BSC argues that "[a]ny duties which Boston Scientific may owe have a specialized meaning and must, therefore, be defined by the Court, not

witnesses." (Def.'s Mem. Supp. [Docket 375], at 52). The plaintiffs respond that the testimony BSC objects to would not present inappropriate legal conclusions and would instead go to the causation element of the failure to warn claims.

I have consistently ruled that "opinion testimony that states a legal standard or draws a legal conclusion by applying the law to the facts is generally inadmissible." *Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, at *4 (S.D. W. Va. Sept. 29, 2014) (internal quotes omitted). The existence of a legal duty, however, "involves a mix of legal and factual determinations." *Marcus v. Staubs*, 736 S.E.2d 360, 370 (W. Va. 2012). The court "identifies the existence of duty conditioned upon the jury's possible evidentiary finding," which usually concerns factual questions about foreseeability of harm. *Id.* Without knowing the precise testimony that the plaintiffs will offer regarding the existence of a duty to warn, I cannot presently decide whether or not the evidence will constitute an improper encroachment into the court's province. If it appears at trial that the expert's testimony has moved from proper evidence on foreseeability and causation into the realm of legal conclusion, BSC can object at that time. BSC's motion *in limine* on evidence about legal duty to warn is therefore **DENIED without prejudice**.

### 21.     Motion to Preclude Any Evidence of Personalities of Treating Physicians or Circumstances of Their Departure From Practice

Specifically concerned about testimony that the plaintiffs might elicit from Dr. Michael Lassere, BSC asks the court to preclude evidence regarding the personalities of the plaintiffs' treating physicians and the circumstances of their departure from practice. The plaintiffs state that they "cannot fathom a reason to admit [such] evidence at this time" but that character evidence about the implanting physicians "can be admissible to rehabilitate or impeach their credibility." (Pls.' Omnibus Resp. [Docket 395], at 36).

18

It is probable that this evidence about Dr. Lassere is inadmissible, but without knowing the context in which the plaintiffs might introduce this evidence, I cannot make a ruling at this time. A broad exclusion on all evidence of the treating physicians' personalities and current state of practice might foreseeably prevent the plaintiffs from impeaching or rehabilitating the credibility of the treating physicians. Accordingly, I place my trust in counsel to abide by the rules regarding admission of character evidence, and I **DENY without prejudice** BSC's motion *in limine* on this issue.

> ### 22. Motion to Preclude Any Evidence or Argument Regarding Malpractice Lawsuits, Board of Medicine Complaints, or Other Allegations or Prior Misconduct Concerning the Implanting Physicians

On grounds similar to the motion addressed above, BSC moves to preclude any evidence that "one or more of the implanting physicians have been the subject of malpractice lawsuits, board of medicine complaints, or other complaints related to their practice of medicine." (Def.'s Mem. Supp. [Docket 375], at 55). The plaintiffs again state that they "cannot fathom a reason to admit [such] evidence at this time" but that character evidence about physician misconduct "could be admissible to rehabilitate or impeach their credibility." (Pls.' Omnibus Resp. [Docket 395], at 37).

As I previously explained, it is probable that this evidence about the physicians' prior conduct is inadmissible, but without knowing the context in which the plaintiffs might introduce this evidence, I cannot make a ruling at this time. A broad exclusion on all evidence of malpractice lawsuits and the like could foreseeably prevent the plaintiffs from impeaching or rehabilitating the credibility of the treating physicians. Accordingly, I once again place my trust in counsel to abide by the rules regarding admission of character evidence, and I **DENY without prejudice** BSC's motion *in limine* on this issue.

**23.    Motion to Preclude Any Evidence or Testimony Concerning Marnie Moose's Opinions About Pelvic Mesh or the Cause of Plaintiff Blankenship's Complaints**

As the plaintiffs accurately point out, BSC's motion *in limine* regarding Marnie Moose is actually an attempt to file an untimely *Daubert* motion. Pursuant to the Third Amended Docket Control Order (Pretrial Ord. # 112 [Docket 404]), *Daubert* motions were due on August 1, 2014. BSC cannot avoid this deadline by including an objection to Ms. Moose based on her qualifications in its motion *in limine*. Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice** and I **RESERVE** ruling on the admissibility of Ms. Moose's expert opinions for trial.

**24.    Motion to Preclude Any Evidence or Testimony Concerning Dr. Jagannath's Opinions as to the Cause of Plaintiff Wilson's Complaints**

BSC seeks to preclude testimony from Dr. Thopsie Jagannath in which Dr. Jagannath "attempt[s] to make a causal connection between the implantation of the Obtryx sling and Ms. Wilson's allegations of pain." (Def.'s Mem. Supp. [Docket 375], at 59). BSC argues that Dr. Jagannath is not qualified to offer an opinion as to the cause of Ms. Wilson's vaginal pain, and so "any attempts by Plaintiff Wilson to elicit testimony related to causation of the pain or symptoms that Plaintiff Wilson alleges" would be improper under Federal Rule of Evidence 702. (*Id.* at 61); *see also* Fed. R. Evid. 702 (allowing the designation of an expert witness only if he is "qualified as an expert by knowledge, skill, experience, training, or education"). In response, the plaintiffs argue that "causation opinions, if formed in the course of treatment of the bellwether plaintiffs, should not be excluded." (Pls.' Omnibus Resp. [Docket 395], at 39).

These arguments under Rule 702 are not proper for a motion *in limine*. BSC should have raised its objections to Dr. Jagannath's qualifications in a *Daubert* motion. Pursuant to the Third Amended Docket Control Order (Pretrial Ord. # 112 [Docket 404]), *Daubert* motions were due

on August 1, 2014. BSC cannot avoid this deadline by including an objection to Dr. Jagannath based on his qualifications in its motion *in limine*. Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**, and I **RESERVE** ruling on the admissibility of Dr. Jagannath's expert opinions for trial.

### 25. Motions *in Limine* Regarding Any Witnesses Yet to be Deposed

As the plaintiffs accurately point out, BSC's final motion *in limine* is not a motion *in limine* at all. Instead, BSC is moving for "leave to file additional motions *in limine*" regarding the testimony of four doctors who have yet to be deposed. (Def.'s Mem. Supp. [Docket 375], at 62). In the interest of time – trial is imminent – I **DENY** BSC's motion on this issue.

## III. The Plaintiffs' Motions

### 1. Plaintiff Jeanie Blankenship's Motion *in Limine*

The plaintiff, Jeanie Blankenship, seeks to exclude any evidence "attempt[ing] to blame Plaintiff's injuries on (1) sexually transmitted diseases, (2) unsuccessful pregnancies, and (3) BSC's Lynx device." (Pl.'s Mem. of Law in Supp. of Mot. *in Limine* No.1 – Case Specific ("Blankenship Mem. Supp.") [Docket 364], at 1). The plaintiff argues that the court should preclude BSC from referring to these conditions because BSC has no evidence of causation. (*Id.*). BSC does not oppose the plaintiff's motion with regard to unsuccessful pregnancies. Therefore, the plaintiff's motion *in limine* with regard to unsuccessful pregnancies is **GRANTED**.

Next, in response to the plaintiff's motion, BSC contends that evidence regarding the plaintiff's decision to undergo a Lynx sling replacement is relevant to her failure to warn and design defect claims, as well as BSC's defenses of assumption of the risk and comparative fault. (BSC's Resp. to Pl.'s Mot. *in Limine* No. 1 – Case Specific ("BSC's Resp. re: Blankenship")

[Docket 380], at 1-2). I disagree. The plaintiff is not asserting any claims in regard to the Lynx. (*Id.* at 2). Evidence relating to devices not at issue is outside the scope of the plaintiff's claims and would tend to mislead the jury. Accordingly, the plaintiff's motion *in limine* with regard to the Lynx is **GRANTED**.

Finally, in response to the plaintiff's motion, BSC asserts it should be allowed to present evidence and testimony showing that Ms. Blankenship's abdominal pain *can* be caused by a sexually transmitted disease ("STD"). The plaintiff argues that BSC has no evidence that an STD caused her injuries because Dr. Dopson, BSC's expert, neglected to offer any opinion on the subject. This contention is misplaced. In her deposition, Dr. Dopson addresses the possibility that an STD *could have* caused Ms. Blankenship's abdominal pain. (*See* Dopson Dep. [Docket 380-6], at 186-87). Although the reliability of this statement is questionable, the plaintiff has not objected to Dr. Dopson's opinions and testimony under *Daubert*. Therefore, the plaintiff's motion *in limine* with regard to STDs is **DENIED without prejudice** and I **RESERVE** ruling on the admissibility of Dr. Dopson's expert opinions for trial.

2.     **The Plaintiffs' Motions** *in Limine*

A. **Motion to Preclude 510(k) Clearance or Lack of FDA Enforcement Action**

The plaintiffs seek to preclude "any argument, evidence or testimony relating to the FDA's 510(k) clearance of BSC's mesh products or the lack of FDA enforcement action relative to these products." (Pls.' Mem. of Law in Supp. of Their Mots. *in Limine* – Generic ("Pls.' Mem. Generic") [Docket 367], at 1). The plaintiffs argue that such evidence is not relevant to state tort law and unfairly prejudicial. (*Id.*). In opposition, BSC contends that FDA evidence is probative on the issues of (1) absence of product defect; (2) adequacy of Obtryx warnings; and (3) punitive damages and BSC's conduct. (*See generally* BSC's Opp. to Pls.' Mot. *in Limine* No. 1 to

22

Exclude 510(k) & FDA Enforcement Evidence ("Def.'s Opp. re: FDA") [Docket 391]).

My reasoning for excluding evidence of the 510(k) process in general is fully set out in *Lewis v. Johnson & Johnson*, --- F. Supp. 2d. ---, No. 2:12-cv-04301, 2014 WL 152374, at *2, *4-6 (S.D. W. Va. Jan. 15, 2014). I will not rehash it here. I will simply describe relevant West Virginia law and explain why evidence of the 510(k) process should be excluded in this case.[5]

### a.  West Virginia Law

In West Virginia, "[p]roduct liability actions may be premised on three independent theories – strict liability, negligence, and warranty. Each theory contains different elements which plaintiffs must prove in order to recover." Syl. pt. 6, *Ilosky*, 307 S.E.2d 603. With regard to strict liability, "a defective product may fall into three broad, and not necessarily mutually exclusive categories: design defectiveness, structural defectiveness; and use defectiveness arising out of the lack of, or the inadequacy of, warnings, instructions and labels." *Morningstar*, 253 S.E.2d at 682. To recover on a strict liability claim, the "product must be defective in the sense that it is not reasonably safe for its intended use . . . . determined . . . by what a reasonably prudent manufacturer's standards should have been at the time the product was made." *Id.* at 683.  In *Morningstar*, the court explains that design and structural defectiveness claims focus on the "physical condition of the product which renders it unsafe." *Id.* at 682. For the third category, the focus is still "unsafeness," but instead, the claim "aris[es] out of the failure to adequately label, instruct or warn." *Id*. In sum, it is clear under *Morningstar* that the pivotal issue in all three categories is the safety of the product.

### b.  Absence of Product Defect

---

[5] BSC does not cite to any West Virginia law in support of its argument regarding the adequacy of Obtryx warnings. Therefore, this issue is governed by my reasoning in *Lewis*.

BSC argues that evidence of compliance with applicable standards is relevant to the issue of whether the product is reasonably safe for its intended use. However, I have repeatedly held that the 510(k) process does not relate to safety or efficacy of a product; therefore, BSC's argument has no merit.

Additionally, BSC cites two West Virginia cases in support of its proposition that federal compliance is relevant to the issue of due care. In *Yost v. Fuscaldo*, the court states that "the placement of the safety bar met OSHA standards." 408 S.E.2d 72, 77 (W. Va. 1991). BSC construes this statement as a holding by the court that compliance with OSHA is relevant to the assessment of due care. I disagree. The dispositive issue in *Yost* was whether the independent contractor possessed special skill or competence, thereby altering his requisite duty of care. *See Yost*, 408 S.E.2d at 76-77. The mention of OSHA and ANSI standards serves merely as ancillary evidence.

In *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, the court holds "that a jury may consider federal *safety* standards, but that compliance with those standards is not conclusive proof that the design of the product was reasonable." 672 S.E.2d 345, 356 (emphasis added) (citing *Johnson v. General Motors Corp.*, 438 S.E.2 28, 39 (W. Va. 1993). Again, the focus of this holding is on the safety of the product, just as *Morningstar* defines and explains. Neither of these cases cited by BSC stands for the proposition that compliance with *non-safety* regulations is relevant to whether a product is reasonably safe for its intended use.

### c.   *Punitive Damages & BSC's Conduct*

Finally, in response to the plaintiff's motion, BSC argues that compliance with the FDA is relevant to the plaintiffs' punitive damages claims and the reasonableness of BSC's conduct. (Def.'s Opp. re: FDA [Docket 391], at 2). However, BSC fails to identify any controlling West

Virginia law that would differentiate this case from previous MDLs. BSC cites to *Davis v. Celotex Corp.*, 420 S.E.2d 557 (W. Va. 1992), in support of its proposition. (Def.'s Opp. re: FDA [Docket 391], at 2). However, this case makes no mention of the FDA 510(k) clearance process. In fact, it makes no mention of the FDA at all. Although *Davis* outlines the general rule in West Virginia for awarding punitive damages, this recitation of the rule is hardly sufficient to sustain BSC's argument. Furthermore, whether or not compliance with *non-safety* regulations is relevant to punitive damages in this case, I hold that 510(k) evidence is inadmissible because of its potential to confuse the issues and mislead the jury. Accordingly, the plaintiffs' motion *in limine* on this issue is **GRANTED**.

### B.     Motion to Preclude Evidence Pertaining to AUGS/SUFU & IUGA

The plaintiffs move to preclude evidence relating to position statements made by the American Urogynecologic Society ("AUGS") and the Society of Urodynamics, Female Pelvic Medicine and Urogenital Reconstruction ("SUFU") and by the International Urogynecological Association ("IUGA"). The plaintiffs argue that the statements lack a scientific basis and are, thus, not admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). The plaintiffs also argue that the evidence will mislead the jury and should be precluded under Federal Rule of Evidence 403.

I have previously denied motions *in limine* as to this issue, and I adopt those rulings here. *See Huskey*, 2014 WL 3861778, at *2; *Lewis*, 2014 WL 505234, at *2. I explained:

> First, to the extent that the Position Statement is relied upon by an expert witness, it may be admissible under the learned treatise exception to the hearsay rule. *See* Fed. R. Evid. 803(18). Second, under Rule 703, experts are permitted to rely on otherwise inadmissible information provided that they "would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Third, Ethicon's state of mind is relevant to the punitive damages claim, and "[a]n out-of-court statement that is offered to show

> its effect on the hearer's state of mind is not hearsay under Rule 801(c)." *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002). Provided that Ethicon properly introduces this evidence, the plaintiffs' motion on this issue is **DENIED**.

*Huskey*, 2014 WL 3861778, at *2; *see Lewis*, 2014 WL 505234, at *2. Accordingly, in this case, the plaintiffs' motion with respect to this issue is **DENIED**.

### 3.    Plaintiff Chris Rene Wilson's[6] Motions *in Limine*

#### A.    Motion to Exclude Reference to the Plaintiff's Prior Suicide Attempt

Plaintiff Chris Rene Wilson moves to exclude "all evidence, reference, testimony or argument relating to [her] prior suicide attempt" which occurred 14 years ago after her father's death. (Pl.'s Mot. *in Limine* – Reference to Pl.'s Prior Suicide Attempt ("Pl.'s Mot. re: Suicide Attempt") [Docket 368], at 1-2). The suicide attempt occurred approximately 10 years before her Obtryx implantation surgery. (*See id.* at 1; BSC's Opp'n to Pls. Mot. *in Limine* Re: Reference to Pl.'s Prior Suicide Attempt ("BSC's Opp'n re: Suicide Attempt") [Docket 390], at 1). The plaintiff argues that evidence of her prior suicide attempt is irrelevant under Federal Rule of Evidence 401 and that "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury" under Federal Rule of Evidence 403. In response, BSC argues that the plaintiff's prior suicide attempt is, in fact, relevant because it demonstrates an alternative cause for her psychological and emotional suffering, besides the plaintiff's Obtryx surgery. (*See* BSC's Opp'n re: Suicide Attempt [Docket 390], at 1-2).

Reference to the plaintiff's prior suicide attempt runs afoul of Rule 403. The probative value of this evidence "is substantially outweighed by the danger of . . . unfair prejudice,

---

[6] The plaintiff testifies that she has a "gender identity disorder[,]" where she explains that "ever since I can remember I just kind of been like I've had the soul of a man in me." (Wilson Dep. [Docket 370-1], at 63: 3, 5-6). Also, when asked if she identifies her "true gender as male," the plaintiff states "I self-identify myself as Chris . . . So I don't identify any way." (*Id.* 63:16-23). The plaintiff's counsel have written these motions *in limine* [Dockets 368-373] referring to the plaintiff as "Ms. Wilson" and using female pronouns. Therefore, in this opinion, I will also use female pronouns when referring to the plaintiff.

confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. This motion *in limine* does not ask the court to preclude all evidence of the plaintiff's "pre-implant mental and emotional suffering." (BSC's Opp'n re: Suicide Attempt [Docket 390], at 2). The plaintiff moves to preclude one particularly private, sensitive, and stigmatizing aspect of her "chronic history of mental and emotional suffering[.]" (*Id.* at 1). The risk of unfair prejudice is too great. Therefore, Ms. Wilson's motion as to this matter is **GRANTED**.

### B.        Motion to Exclude Reference to the Plaintiff's Gender Identity

Ms. Wilson moves to preclude all evidence, testimony, reference, or argument that relates to her gender identity status. She testified that she has a "gender identity disorder[,]" where she explains that "ever since I can remember I just kind of been like I've had the soul of a man in me." (Wilson Dep. [Docket 370-1], at 63: 3, 5-6). The plaintiff has "always been attracted to women" and states that "sometimes I have the woman tendencies, you know, the hormones run, they do their duty, but, as far as, you know, the sexual attraction bit, I have always felt like I had the soul of a man and that's it." (*Id.* at 63:11-15). For 21 years, the plaintiff has been in a romantic, monogamous relationship with a woman. (*See* Wilson Dep. [Docket 387-2], at 61:11-15). When asked if she identifies her "true gender as male," the plaintiff states "I self-identify myself as Chris . . . So I don't identify any way." (Wilson Dep. [Docket 370-1], at 63:16-23). She argues that evidence concerning her gender identity is irrelevant under Federal Rule of Evidence 401 and that "its probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time" under Federal Rule of Evidence 403. (Pls.' Mot. *in Limine* – Reference to Plaintiff's Gender Identity [Docket 370], at 2).

Ms. Wilson's gender identity is irrelevant to her claims in this case. Fed. R. Evid. 401. Evidence or argument concerning her gender identity has no tendency to make a material fact more or less probable. Fed. R. Evid. 402. Moreover, Federal Rule of Evidence 403 warrants the exclusion of evidence concerning Ms. Wilson's gender identity. Admission of this evidence would unfairly prejudice the plaintiff.

In its response, BSC raises concern as to Ms. Wilson's dyspareunia claim and the fact that different witnesses may refer to the plaintiff using female and male pronouns. These matters will be addressed at the pretrial conference and/or at trial. As for the use of pronouns, I expect that all witnesses will refer to the plaintiff in the manner in which she desires to be addressed, and I expect the parties to resolve this issue in advance of trial. To the extent that Ms. Wilson alleges dyspareunia at trial, the parties should use great caution and should focus any line of testimony on the sexual activity that she alleges causes her pain and not on her gender identity status. As a matter of law, I will not allow Ms. Wilson's gender identity to be the focus of cross examination. Therefore, I **GRANT** the plaintiff's motion as to this matter.

### C.      Motion to Exclude Reference to the Plaintiff's Methods of Conception

Ms. Wilson moves to exclude all evidence, argument, reference, and testimony related to the methods that she used to conceive a child. Ms. Wilson has been "impregnated twice as the result of successful artificial insemination techniques." (Pl.'s Mot. *in Limine* – Reference to Plaintiff's Methods of Conception [Docket 369], at 1). The plaintiff argues that evidence of her methods of conception should be excluded under Federal Rules of Evidence 401 and 403.

Evidence or argument concerning Ms. Wilson's methods of conception is irrelevant to this case. Fed. R. Evid. 402. It has no tendency to make a material fact more or less probable. Fed. R. Evid. 401. Therefore, I **GRANT** the plaintiff's motion with respect to this matter.

**D.** **Motion to Exclude Reference to the Plaintiff's Diagnosis of Trigeminal Neuralgia**

Ms. Wilson moves to exclude evidence, argument, reference, and testimony relating to her diagnosis of trigeminal neuralgia. In her motion, the plaintiff explains that "[t]rigeminal neuralgia is defined as a condition that causes 'paroxysmal shooting pain of the facial area around one or more branches of the trigeminal nerve, of unknown cause, but often precipitated by touching specific areas in or about the mouth.'" (Pl.'s Mot. *in Limine* – Reference to Pl.'s Diagnosis of Trigeminal Neuralgia ("Pl.'s Mot. re: Trigeminal Neuralgia") [Docket 371], at 1-2 (citing a medical dictionary)). She testified that she was diagnosed in 2003 but has been suffering from the condition since approximately 1996. (Wilson Dep. [Docket 371-1], at 36:22-37:1). The plaintiff argues that this condition is "in no way associated with the injuries claimed in this law suit [sic]." (Pl.'s Mot. re: Trigeminal Neuralgia [Docket 371], at 2). She contends that this evidence is irrelevant under Federal Rule of Evidence 401 and should be excluded under Federal Rule of Evidence 403.

In response, BSC makes three arguments. First, BSC contends that evidence of her trigeminal neuralgia is relevant to causation because it may be an alternative cause of her pain. (*See* BSC's Opp'n to Pl.'s Mo. *in Limine* re: Reference to Pl.'s Diagnosis of Trigeminal Neuralgia ("BSC's Opp'n re: Trigeminal Neuralgia") [Docket 389], at 1). Second, BSC contends that this evidence is relevant to damages because the plaintiff's trigeminal neuralgia may be an alternative cause as to Ms. Wilson's "alleged diminished quality of life." (*Id.* at 2). Third, BSC argues that evidence concerning her trigeminal neuralgia treatment is relevant to its assumption of the risk defense because it is probative of "her willingness to assume the potential risks associated with the Obtryx." (*Id.*).

29

Ms. Wilson had brain surgery for her trigeminal neuralgia in 2004, and she continues to experience severe pain as a result of this condition two to three times per year. (BSC's Opp'n re: Trigeminal Neuralgia [Docket 389], at 2; Wilson Dep. [Docket 389-2], at 45:17-24). In fact, she went to the emergency room for her trigeminal neuralgia as recently as 2011. (*See* Wilson Dep. [Docket 389-2], at 189:11-191:2). In her Plaintiff Fact Sheet for this case, Ms. Wilson states that one current symptom she suffers from her Obtryx is "neuromuscular issues." (Wilson Pl. Fact. Sheet [Docket 389-1], at 7). She also mentions that she has had "physical pain and discomfort which [she] continues to suffer." (*Id.*).

I do not have enough specificity and context to rule on this motion at this time. I need more information about trigeminal neuralgia, the nature of Ms. Wilson's complaints related to this condition, and the nature of her neuromuscular and other issues related to the Obtryx before I can rule. Therefore, I **DENY without prejudice** the plaintiff's motion as to this matter. *See In re C. R. Bard, Inc.*, 2013 WL 3282926, at *2.

### E.    Motion to Exclude Reference to the Plaintiff's Prior Lawsuit

The plaintiff Ms. Wilson moves to exclude all evidence, testimony, argument, and reference related to her prior lawsuit regarding Triple X Trucking. Ms. Wilson started a coal trucking business in 1994 named Triple X Trucking and later sued the city to challenge a law regulating the size of trucks. (*See* Pl.'s Mot. *in Limine* – Reference to Prior Lawsuit ("Pl.'s Mo. re: Prior Lawsuit") [Docket 372], at 1; Wilson Dep. [Docket 372-1], at 34:4-35:9). This lawsuit was ultimately dismissed, and her trucking business no longer exists. (*See* Pl.'s Mot. re: Prior Lawsuit [Docket 372], at 1-2; Wilson Dep. [Docket 372-1], at 35:10-14). The plaintiff argues that evidence concerning her prior lawsuit is irrelevant under Federal Rule of Evidence 401 and is unfairly prejudicial, a delay and a waste of time under Federal Rule of Evidence 403.

In response, BSC concedes that "it does not intend to affirmatively introduce" evidence concerning Ms. Wilson's prior lawsuit. (BSC's Opp'n to Pl.'s Mot. *in Limine* re: Reference to Prior Lawsuit [Docket 383], at 1). Therefore, I **GRANT** the plaintiff's motion with respect to this matter. BSC notes, however, that it "reserves its right to introduce evidence concerning Plaintiff's prior lawsuit involving Triple X Trucking to the extent such evidence is necessary to rebut evidence or to impeach testimony offered by Plaintiff, or on Plaintiff's behalf, at trial." (*Id.*). If BSC does introduce evidence of the prior lawsuit for rebuttal or impeachment purposes, I will rule on objections to this evidence raised at trial.

### F.   Motion to Exclude Reference to the Plaintiff's Worker's Compensation Claim

The plaintiff Ms. Wilson moves to exclude all evidence, testimony, argument, or reference relating to her worker's compensation claim. In the early 1990s, Ms. Wilson filed a worker's compensation claim after breaking her wrist when a truck tire fell on it. (Wilson Dep. [Docket 373-1], at 49:3-15). The plaintiff argues that her wrist injury is irrelevant under Federal Rule of Evidence 401 and a delay and waste of time under Federal Rule of Evidence 403.

In response, BSC concedes that "it does not intend to affirmatively introduce evidence" concerning Ms. Wilson's worker's compensation claim. (Def. BSC's Resp. in Opp'n to Pl.'s Mot. In Limine re: Reference to Pl.'s Worker's Compensation Claim [Docket 384], at 1). Therefore, the plaintiff's motion is **GRANT** with respect to this matter. BSC notes, however, that it "reserves its right to introduce evidence concerning Plaintiff's worker's compensation to the extent that Plaintiff opens the door and such evidence is necessary to rebut evidence or to impeach testimony offered by Plaintiff, or on Plaintiff's behalf, at trial." *Id.* If BSC does introduce evidence of the worker's compensation claim for rebuttal or impeachment purposes, I will rule on objections to this evidence raised at trial.

IV.     **Conclusion**

For the reasons stated above, Defendant's Initial Motions *in Limine* [Docket 374] are **GRANTED in part** and **DENIED in part**, Plaintiffs' Omnibus Motions [Docket 366] *in Limine* are **GRANTED in part** and **DENIED in part**, Plaintiff Jeanie Blankenship's Motion *in Limine* [Docket 363] is **GRANTED in part** and **DENIED in part**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Prior Suicide Attempt [Docket 368] is **GRANTED**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Method of Conception [Docket 369] is **GRANTED**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Gender Identity [Docket 370] is **GRANTED**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Diagnosis of Trigeminal Neuralgia [Docket 371] is **DENIED without prejudice**, Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Prior Lawsuit [Docket 372] is **GRANTED**, and Plaintiff Chris Rene Wilson's Motion *in Limine* – Reference to Plaintiff's Worker's Compensation Claim [Docket 373] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          October 22, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE