

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JACQUELYN TYREE, et al.,
        Plaintiffs,

v.                                        CIVIL ACTION NO.    2:12-cv-08633

BOSTON SCIENTIFIC CORPORATION,
        Defendant.


## THE COURT'S CHARGE AND INSTRUCTIONS


1.    INTRODUCTION

Members of the jury:

Now that you have heard all of the evidence, it becomes my responsibility

to instruct, or charge you, concerning the law that applies to this case.    It is my

exclusive responsibility and duty to consider, determine and explain the rules of

law that apply in a particular case.    It is your exclusive responsibility and duty to

consider and determine what occurred factually, that is, what the jury believes

the true facts are from among all of the evidence and testimony which has been

produced.    I have no right to tell you which facts are established by the

testimony and any exhibits, as that determination is exclusively yours.    You, and

only you, are the judges of the facts.    If any expression of mine or anything I may

or may not have done or said would seem to indicate any opinion relating to any factual matters in this case, I instruct you to disregard it.

2.   DUTY TO FOLLOW INSTRUCTIONS

It is your duty as jurors to accept and follow the law as contained in these instructions, and to apply that law to the facts that you believe have been proven and established from all of the evidence in the case.   If I state any rule, direction or idea in varying ways, no emphasis is intended by me and none must be inferred by you.   Each instruction is as important as any other.   You are not to single out one statement or instruction alone as stating the law and ignore the other instructions or parts of instructions.   You are to consider and apply these instructions together as a whole, and you are to regard each instruction in the light of all others.   Neither are you to be concerned with the wisdom of any rule of law stated by me.   If you have any personal opinion as to what the law is, or ought to be, you must put that opinion aside and accept and apply the law as it is. It would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in these instructions; just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in this case.   In performing your duties as jurors, you must not

2

permit yourself to be influenced or swayed by sympathy, bias, prejudice or favor as to any party.   All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.   This case must be considered and decided by you as an action between persons of equal standing in the community and holding the same or similar stations in life.   A corporation is entitled to the same fair and impartial consideration as is a private individual.   All persons, including corporations, stand equal under the law.

A corporation, such as the defendant, can only act through its officers, agents and employees.   Consequently, any act or omission by an officer, agent or employee of the defendant in the performance of his or her duties is held in law to be the act of the defendant.

3.    BURDEN OF PROOF

The burden of proof is on the plaintiff in a civil action, such as this, to prove each and every essential element of her claim by a preponderance of the evidence.   If the proof should fail to establish any element of the plaintiff's claim by a preponderance of the evidence in the case, or if the defendant's evidence outweighs the plaintiff's, or if the evidence is evenly balanced in the case, the jury

should find for the defendant as to that claim.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.   In other words, a preponderance of the evidence in the case means such evidence, as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds a belief that that which is sought to be proved is more likely true than not true.

While the burden is on the plaintiff to prove her claim by a preponderance of the evidence, this rule does not require proof to an absolute certainty.   Such proof to an absolute certainty is seldom possible in any case.   In a civil case, such as this, as opposed to criminal cases, it is proper to find that the plaintiff has succeeded in carrying the burden of proof, if, after consideration of all the evidence in the case, you believe that what is sought to be proven on that issue is more likely true than not true.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and defense separately, but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have

produced them.

4.   CONSIDERATION OF THE EVIDENCE

This trial is a consolidated trial of four separate cases filed by four separate plaintiffs against Boston Scientific.   Although the evidence has been presented in one trial together, and although some evidence may overlap, you must consider each plaintiff and her individual claims separately from the others.   That is, treat each case separately as if each had been tried by itself.   In that regard, you may not consider facts that relate specifically to only one plaintiff as to any other plaintiff.   You may not even consider that more than one claim was brought when reaching your verdict to a particular plaintiff.   Likewise, as to Boston Scientific's defenses, you must consider its defenses separately with respect to each plaintiff.   You will be asked to decide each of the cases separately, and your decision for each case must rest on the merits of each plaintiff's individual claims and on the merits of Boston Scientific's defenses as to each plaintiff's claim.

You are to determine the facts of this case from the evidence alone.   The "evidence" in the case always consists of the sworn testimony of all the witnesses, whether the witness appeared in person or by deposition, regardless of who may have called the witness; and all exhibits received in evidence, regardless of who

may have produced them; and, all facts which may have been admitted by stipulation or admission.   When the attorneys for all parties stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as conclusively proven.   During the trial of this case, certain deposition testimony was presented by video, consisting of answers under oath to questions asked of the witness in advance of the trial, in the presence of a court reporter.   The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in the form of a deposition under oath by videotape.   Such testimony is entitled to the same consideration, and is to be judged as to credibility and weight, as if the individual had been present and had testified from the witness stand.   Accordingly, during your deliberations, you should carefully consider the testimony of each and every witness and all exhibits, and not disregard or overlook any testimony, witness, exhibit or evidence.   There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case.   One is direct evidence -- such as the testimony of any eyewitness.   The other is indirect or circumstantial evidence -- the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with all of the evidence in this case, both direct and circumstantial. You may not guess or speculate as to the existence of any facts in this case.    But, in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify.    On the contrary, you are permitted to draw, from the facts which you find have been established and proven, such reasonable inferences and conclusions which reason and common sense lead you to make and as seem justified in the light of your own observations and experience in the ordinary affairs of life.

In the exhibits that were admitted as evidence or discussed at trial, certain information may have been redacted or blacked-out, with the Court's permission. The fact that an exhibit was redacted should draw no inference or assumption as to why a document was redacted or blacked out.

In addition, some documents that have been received into evidence in these cases bear a confidentiality designation.    The confidentiality designation is indicated by the word "confidential" or similar words appearing on the document. These designations are made by prior agreement of the parties during a pre-trial

exchange of documents in order to keep confidential certain materials that are considered private or proprietary.   These designations were not made when the document was first created.   You are not to draw any inferences or reach any conclusions from the fact that a document bears a confidentiality stamp.

The parties have used drawings, charts, summaries and other demonstrative aids to help explain the evidence.   These are not evidence.   If you find a demonstrative aid does not accurately summarize the evidence, you should disregard it.

Also, during this trial, you have heard statements read from medical journal articles, textbooks and statements by physician organizations, and similar materials, which the parties and the Court have sometimes called "learned treatises."   Unlike other exhibits I have admitted, you will not receive these materials for use in deliberations.   Nonetheless, you should consider the statements read from these materials the same as you consider any other evidence.

Nothing that I have said or done at any time during the trial is to be considered by you as evidence of any fact or as indicating any opinion concerning any fact, the credibility of any witness, the weight of any evidence or the verdict

8

that should be reached.

Nothing said or done by the attorneys is to be considered by you as evidence of any fact.   Opening statements and final arguments are intended to help you to understand the evidence and apply the law, but they are not evidence.   If any argument, statement or remark of counsel during opening statements and closing arguments is inconsistent with the evidence or with my instructions, you should disregard that argument, statement or remark.

Disregard entirely questions and exhibits to which an objection was sustained or answers and exhibits ordered stricken out of the evidence.   Do not draw any inferences therefrom, or speculate as to matters thereby hinted.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

5.   <u>CREDIBILITY OF WITNESSES</u>

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate.   You, as jurors, are the sole judges of the "credibility of a witness" and the "weight of the evidence." The "credibility of a witness" means the truthfulness or lack of truthfulness of the witnesses, and the "weight of the evidence" means the extent to which you are or

are not convinced by the evidence.    A witness is presumed to speak the truth. But this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence. You should carefully scrutinize the testimony given, the circumstances under which the witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause the jury to discredit such testimony.    Two or more persons witnessing an incident may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience.    Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of differing witnesses, should be considered by you, but, in weighing their effect, you should consider whether the inconsistencies or discrepancies pertain to a matter of importance or an unimportant detail, and whether the discrepancy or inconsistency results from innocent error or willful falsehood.

A witness, whether or not a party, may be discredited or impeached by contradictory evidence, or by evidence that at prior times the witness has

testified or has made statements which are inconsistent with the witness' present testimony in this trial.

The number of witnesses testifying on one side or the other of an issue is not alone the test of the "credibility of the witnesses" and the "weight of the evidence."   If warranted by the evidence, you may believe one witness against a number of witnesses testifying differently.   The tests are:   How truthful is the witness, and how convincing is his or her evidence, and which witnesses and which evidence appeals to your minds as being most accurate and otherwise trustworthy in the light of all the evidence and circumstances shown.

In determining the credit and weight you will give to the testimony of any witness who has testified before you, you may consider, if found by you from the evidence:

1)   his or her good memory or lack of memory;

2)   the interest or lack of interest of the witness in the outcome of the trial;

3)   the relationship of any witness to any of the parties or other witnesses;

4)   his or her demeanor and manner of testifying;

5)      his or her opportunity and means or lack of opportunity and means of having knowledge of the matters concerning which he or she testified;

6)      the reasonableness or unreasonableness of his or her testimony;

7)      his or her apparent fairness or lack of fairness;

8)      the intelligence or lack of intelligence of the witness;

9)      the bias, prejudice, hostility, friendliness or unfriendliness of the witness for or against any of the parties;

10)     contradictory statements of any witness, if you believe that such were made by the witness and that the same are contradictory of his or her testimony; however, contradictory statements, if any, may or may not be considered by the jury to establish the truth of such statements;

11)     contradictory acts of any witness, if you believe that such were committed by the witness and that they were contradictory of his or her testimony.

From these considerations and all other conditions and circumstances appearing from the evidence, you may give to the testimony of the witness such credit and weight as you believe it is entitled to receive.

If you believe that any witness in this case has knowingly testified falsely as

to any material fact, you may, after considering and weighing the testimony of such witness, disregard the whole of the testimony of such witness or give it, or any part thereof, such weight and credit as you believe it to be entitled to receive.

6.   <u>EXPERT WITNESSES - OPINIONS</u>

Ordinarily, witnesses are not permitted to testify as to opinions or conclusions.   However, the rules of evidence provide that if scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify and state his or her opinion concerning such matters, and may state the reasons for the opinion. You should consider each expert opinion received in evidence in this case, and the reasons given in support of the opinion, and give it such weight as you may think it deserves.   In determining the weight to be given to the opinion of an expert, you should consider the education, training and experience of the expert, the basis for the opinion, the confidence of the witness, the reasons and reasoning stated by the witness, the opinions of other similar witnesses on the same matters, any bias, and the rules generally applicable to other witnesses in this case.   If you should decide that the opinion of an expert witness is not based

upon sufficient education and/or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely, or give it such weight as you find it deserves.

7.    EXPERT WITNESSES - HYPOTHETICAL

Expert witnesses were, at times, asked hypothetical questions, and they gave answers to such questions.   "A hypothetical question has been defined as a form of question in which facts that counsel claims or assumes to have been proved are stated as a hypothesis and the opinion of an expert is asked thereon."

In answering a hypothetical question, an expert witness must accept as true every fact stated therein, but that does not mean that the jury must.   If the jury finds that assumed conditions, circumstances or facts are not proven by the evidence, the validity of the opinion may dissolve, and both the question and the answer may be disregarded entirely, or given such weight as you may deem it entitled to receive.

8.    ISSUES YOU ARE TO DECIDE IN THIS CASE

Boston Scientific has been brought to trial only for the claims made by the plaintiffs in this lawsuit.   Therefore, each plaintiff in this case has the burden of

proving that the particular product in the case --- the Obtryx --- was defectively designed, not accompanied by adequate warnings, and/or that Boston Scientific was negligent.   You may not speculate about the existence or nonexistence of other claims, or the merit or lack of merit of any such claims.

West Virginia recognizes claims for product defects: (1) design defectiveness and (2) use defectiveness arising out of the lack of, or the inadequacy of, warnings, instructions, and labels.

Under the first category of defectiveness, the inquiry centers on the physical condition of the product which renders it unsafe when the product is used in the reasonably intended manner.   In the second category of defectiveness, the focus is not so much on a flawed physical condition of the product as on unsafeness, if any, arising out of the failure, if any, to adequately label, instruct, or warn.

9.   STRICT LIABILITY – DEFECTIVE DESIGN

The plaintiffs contend that they were injured as a result of implantation of the defendant's product, the Obtryx.   The plaintiffs' first claim is that the Obtryx was defectively designed.   The defendant denies this allegation.

To recover damages for a defectively designed product, a person injured by

the allegedly defective product must establish the following elements by a preponderance of the evidence:

1) That allegedly defectively design conditions existed in the Obtryx product at the time it left the control of the defendant;

2) That the allegedly defective design conditions made the Obtryx "not reasonably safe for its intended use;"

3) That the plaintiff was injured; and

4) That the plaintiff's injuries were proximately caused by the allegedly defective design conditions of the Obtryx.

Now, I will explain what these terms mean.

In deciding whether or not the Obtryx sling was reasonably safe for its intended use, the standard of reasonable safeness is determined by what a reasonably prudent manufacturer's standards should have been at the time the product was made.   The product is to be judged by what the reasonably prudent manufacturer would have accomplished in regard to the safety of the product, having in mind the general state of the art of the manufacturing process including design, and warnings, at the time the product was made.

A plaintiff is not required to establish a strict products liability cause of

action by identifying a specific defect that caused the loss, but instead may permit a jury to infer the existence of a defect by circumstantial evidence.    In order to proceed upon circumstantial evidence, however, the plaintiff must show that there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction.

An intended use of a product includes all those uses a reasonably prudent person might make of the product, having in mind its characteristics, warnings, and labels.

In determining whether you believe the Obtryx is or is not reasonably safe for its intended use, you may consider the utility of the design against potential risks of the harm created.

Whether each plaintiff has proven her claim for design defect is a question to be decided by you, the jury, based on the instructions I just gave you and the evidence presented that is applicable to that plaintiff.    This includes evidence which relates to every plaintiff, as well as evidence specifically related to the plaintiff whose claim you are considering.

10.   STRICT LIABILITY – FAILURE TO WARN

The plaintiffs also bring a claim in strict liability for failure to warn, which

Boston Scientific denies.   The plaintiffs contend that the Obtryx sling was not reasonably safe for its intended use because it lacked adequate warnings. Because the Obtryx can only be obtained through a physician, the defendant had a duty to adequately warn only the physicians who implant the Obtryx.   The defendant did not have a direct duty to warn consumers, such as the plaintiffs. However, failure to adequately warn physicians can constitute a breach of a duty owed to the consumer.

To recover damages for failure to warn in strict liability, a plaintiff must establish the following elements by a preponderance of the evidence:

1) That the defendant failed to provide adequate warnings to the plaintiff's physician;

2) That the lack of adequate warnings made the Obtryx "not reasonably safe for its intended use;"

3) That the plaintiff was injured; and

4) That the plaintiff's injuries were proximately caused by the lack of adequate warnings to the plaintiff's physician by the manufacturer.

Now, I will explain what these terms mean.

Use defectiveness covers situations when a product may be safe as

designed and manufactured, but which becomes defective because of the failure to warn of dangers which may be present when the product is used in a particular manner.

For the duty to warn to exist, the use of the product must be foreseeable to the manufacturer or seller.   The question of what is an intended use of a product carries with it the concept of all those uses a reasonably prudent physician might make of the product, having in mind its characteristics and warnings.

If you find that Boston Scientific warned the plaintiffs' implanting physicians of the Obtryx's known risks, or that the implanting physicians were independently aware of the Obtryx's known risks, then Boston Scientific is not liable for failure to warn the plaintiffs because it was not the proximate cause of the plaintiffs' alleged damages, and you may find for the defendant on the issue of failure to warn.

A defendant may only be held liable for failure to warn where there is evidence that a warning would have made a difference.   Therefore, the plaintiffs must prove that the warnings they suggest would have caused their treating physicians to change their behavior in a manner which would have avoided each plaintiff's injury.   If you find that additional or different warning by Boston

Scientific would not have prevented any plaintiff's injuries, you may find in favor of Boston Scientific with respect to that plaintiff.

Whether each plaintiff has proven her claim for failure to warn is a question to be decided by you, the jury, based on the instructions I gave you and the evidence presented that is applicable to that plaintiff.   This includes evidence related to every plaintiff, as well as evidence specifically related to the plaintiff whose claims you are considering.

11.   <u>NEGLIGENCE</u>

In addition to claims of strict liability, the plaintiffs allege negligence claims against Boston Scientific.    Boston Scientific denies these claims.

Broadly, the defendant had a duty to use ordinary care for the plaintiffs' safety.

Negligence means the failure of a person to use due care or to do something that a reasonable and prudent person would do in the same or similar circumstances.   On the other hand, negligence may be the doing of something that a reasonably prudent person would not do in the same or similar circumstances.

The plaintiffs allege that the defendant was negligent in two ways.    First,

the plaintiffs allege that the defendant was negligent in its design of the Obtryx. To recover damages as a result of negligent design, a plaintiff must prove by a preponderance of the evidence:

1) Boston Scientific was negligent with respect to the design of the Obtryx; and

2) Such negligence was the proximate cause of the particular plaintiff's injuries.

The plaintiffs' second theory of negligence is that the defendant was negligent in failing to provide adequate warnings.   You should remember that the defendant did not have a duty to warn consumers, such as the plaintiffs, but instead had a duty to warn their physicians as "learned intermediaries."   To recover damages as a result of negligent failure to warn, the plaintiff must prove by a preponderance of the evidence:

1) Boston Scientific was negligent in that it failed to give adequate warnings with respect to the Obtryx; and

2) Such negligence was the proximate cause of the particular plaintiff's injuries.

Whether each plaintiff has proven her claim for negligence is a question to

be decided by you, the jury, based on the instructions I just gave you and the evidence presented that is applicable to that plaintiff. This includes general causation evidence related to every plaintiff, as well as evidence specifically related to the plaintiff whose claim you are considering.

12.   COMPARATIVE NEGLIGENCE

With respect to the plaintiff, Carol Campbell, you may consider the law of comparative negligence. Under this law, you may find that both the plaintiff and the defendant are negligent and, if so, you are required to apportion the percentage of negligence between the plaintiff and the defendant, the total of which may not exceed 100 percent.

In other words, under the law of comparative negligence, as applied to this case, if you determine that both the plaintiff, Carol Campbell, and the defendant, Boston Scientific, are negligent (not solely one or the other), you are required to compare the percentage of negligence of Carol Campbell, if any, with the percentage of negligence of Boston Scientific, if any, and to assign a figure representing the percentage of negligence of each.

There is one additional role involved in the law of comparative negligence. The Court instructs the jury that where the plaintiff, Carol Campbell, by her own

overt actions or failure to act where a reasonably prudent person would have done so, facilitated the events which brought about her injury, you, the jury, may find that the plaintiff, Carol Campbell, was negligent.   If you find that the plaintiff, Carol Campbell, is guilty of negligence which equals or exceeds the negligence of the defendant, Boston Scientific (i.e., 50 percent or more), you must return a verdict for the defendant, Boston Scientific.   This is because West Virginia law recognizes that the plaintiff should not recover a verdict if she is 50 percent or more at fault for her own injuries.

The law of comparative negligence applies only under such circumstances where both the plaintiff and the defendant are found to be negligent.   If you find that only one of the parties in this lawsuit was negligent, you should not apply the doctrine of comparative negligence.

Therefore, if you, the jury, believe from a preponderance of the evidence in this case that the defendant, Boston Scientific, was guilty of negligence and that Boston Scientific's negligence was the proximate cause of the injury, and that the plaintiff, Carol Campbell, was not guilty of an equal or greater amount of negligence, then you should find a verdict for the plaintiff, Carol Campbell, and against the defendant, Boston Scientific.

However, if you believe from a preponderance of all of the evidence that the sole cause of the injury was negligence of the plaintiff, Carol Campbell, then you should find for the defendant, Boston Scientific.

13.   SPECIFIC RELATED TERMS

General causation involves whether a product is capable of causing a particular injury or condition in the general population.   A plaintiff must prove general causation by a preponderance of the evidence.

Specific causation involves whether a product caused a particular individual's injury.   A plaintiff must prove specific causation by a preponderance of the evidence.

The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred.   Proximate cause must be understood as that cause which, in actual sequence, unbroken by any independent cause, produced the event, without which such event would not have occurred.

There may be more than one proximate cause; many factors or things or the conduct of two or more persons may operate at the same time, either independently or together, to cause injury or damage.   In such a case, each may

be a proximate cause.

An intervening cause of an injury is a negligent act or omission which constitutes a new effective cause and which, operating independently of anything else, is the proximate cause of the injury.   Therefore, if a party is guilty of an act of negligence which would naturally produce an injury to another, but, before such injury actually results, a third person does some act which is the immediate, independent cause of the injury, such third person is alone responsible for the injury.

A plaintiff must prove proximate cause by a preponderance of the evidence.

There can be no recovery for any plaintiff for any injury or disability which was not proven to have been proximately caused by the product in question and by the acts or omissions of Boston Scientific.   In addition, Boston Scientific took the plaintiffs as it found them under the thin-skull or eggshell doctrine.   This means that Boston Scientific cannot avoid responsibility by asserting that the Obtryx would not have injured a plaintiff but for the plaintiff's particular pre-existing conditions or individual physical characteristics.

14.   DAMAGES

You should only award a plaintiff such a sum of damages as will reasonably and fairly compensate for the injuries that have been proven by a preponderance of the evidence to have actually been suffered, and proven by a preponderance of the evidence to have been a proximate result of the conduct of the defendant in this case.

If the jury is uncertain as to whether any particular element of damages was directly or proximately caused by the alleged conduct of the defendant, or if it appears just as probable that any injury or element of damage complained of resulted from a cause other than the alleged conduct of the defendant, then the plaintiff cannot recover therefor against the defendant.

You shall not award damages based on speculation or sympathy.   Your assessment of damages must be based only upon that evidence which is presented at trial.

In determining the amount of a plaintiff's damages, if any, you may take into consideration the pain and suffering, including mental anguish and loss of enjoyment of life, endured by the particular plaintiff.   You are instructed that the law cannot give you a precise formula or yardstick by which you can fix with any

degree of exactness compensation for such an intangible item as mental pain, suffering, or loss of enjoyment of life, but the law contemplates that intelligent jurors, exercising common sense and calling upon their experiences in life, can satisfactorily fix and determine a proper award of money for this item of damages under proper instructions from the Court.   Damages for pain and suffering, loss of enjoyment of life, embarrassment, humiliation, and loss of personal dignity are never awarded on the basis of punishment to a defendant for the injuries which the plaintiff sustained.   Nor are they to be measured by the amount of money which you as jurors would demand or ask for enduring the pain which the plaintiff has endured.   On the contrary, damages for this item are to be awarded solely on the basis of compensation -- fair, reasonable and adequate compensation -- taking into consideration the nature and extent of the injury, the character and frequency of the pain resulting from it, and the period it has persisted.

You may also consider future damages arising from a permanent injury, if any.   Future damages require that either the negligently inflicted injury or its direct consequences be proven to a reasonable degree of certainty to have a lasting, permanent future effect.

If a permanent injury is established, then the following elements of future

damages can be considered:   (1) residuals or future effects of an injury which have been proven to reduce the capability of the plaintiff to function as a whole woman; and (2) any proven future pain and suffering.

Whether each plaintiff has proven any part of her claim for damages is a question to be decided by you, the jury, based on the instructions I just gave you and the evidence presented that is applicable to that plaintiff.   This includes evidence related to every plaintiff, as well as evidence specifically related to the plaintiff whose claim you are considering.

15.   <u>PUNITIVE DAMAGES</u>

If you find that a plaintiff is entitled to an award of compensatory damages, then you may also consider whether the plaintiff is entitled to any punitive damages.   Punitive damages are damages that are awarded to punish a defendant who has damaged the plaintiff by acting willfully, wantonly, maliciously or oppressively; or through gross fraud; or by reckless conduct affecting the rights of others.   They are intended to deter the defendant and others from engaging in a similar course of conduct in the future.   Punitive damages are not compensation for injury.   An award of punitive damages means that you, the jury, believe that the defendant should be punished for its conduct as proven by

the evidence in this case.

A plaintiff is not entitled to punitive damages as a matter of right.   In other words, even if you should find that a defendant's conduct rises to the level of gross fraud, malice or oppression, wanton, willful or reckless misconduct, the decision to impose or to withhold punitive damages lies within your sound discretion.

You are instructed that if you find by a preponderance of the evidence that the acts of the defendant were willful, wanton, malicious, oppressive, fraudulent, or with reckless disregard for the plaintiff, then you may award punitive damages against the defendant.   If you so find, the Court will give you further instructions on the issue of punitive damages.

The Court instructs the jury that the fact that the Court has instructed you relative to damages must not be considered by you as an indication that the Court has an opinion relative to whether damages should be awarded.   It is for you, and you alone, to determine whether there should be a recovery in this case.

16.   <u>THE JURY'S DUTY DURING DELIBERATIONS</u>

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

First, when you go to the jury room, you must select one of your members as your foreperson.   That person will preside over your discussions, and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room.   You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussions persuade you that you should.   But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the Court Security Officer, signed by your foreperson.   I will respond as soon as possible either in writing or verbally in open court.   Remember that you should not tell anyone - including me - how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law

which I have given to you in my instructions.   The verdict must be unanimous. NOTHING I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case.   I have prepared a verdict form for you, one for each plaintiff. Consider each verdict form separately, as you would if each plaintiff's case had been tried before you separately.   You will take these forms to the jury room. When you have reached a unanimous verdict for each plaintiff, your foreperson should fill in, date, and sign the verdict form.

Let the Court Security Officer know when you have reached a unanimous verdict on all of the plaintiffs' claims and are ready to return to the courtroom and report your verdict.